Filed 11/22/13  P. v. Nelson CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID M. NELSON,<br><br>        Defendant and Appellant. | A136643<br><br>(Alameda County<br>Super. Ct. No. CH51825A) |

David M. Nelson appeals from a conviction of grand theft.  He contends his conviction must be reversed due to the prosecutor's misconduct in commenting upon appellant's exercise of his right to a jury trial, failure to testify, and post-arrest silence.  He further contends his presentence custody credits were miscalculated.  We conclude that the abstract of judgment must be corrected to reflect additional presentence custody credits and, as so corrected, affirm the judgment.

STATEMENT OF THE CASE

Appellant was charged by information filed on March 22, 2012, with grand theft (Pen. Code, § 487, subd. (a)).[1]  It was alleged that appellant had suffered four prior felony convictions, including one strike conviction, and served three prior prison terms within

_____

[1]All further statutory references will be to the Penal Code.

1

the meaning of section 667.5, subdivision (b).[2] Appellant pleaded not guilty and denied the priors.

Jury trial began on July 30, 2012, and appellant was convicted on August 2. On August 3, the court granted the People's motion to dismiss the fourth charged prior and found the others true.

On September 14, 2012, appellant was sentenced to the low term of 16 months, doubled to 32 months as a result of his prior strike. The court did not impose sentence on the three prior convictions under section 667.5, subdivision (b). Appellant was awarded 74 days of presentence custody credit pursuant to section 2933.1.

Appellant filed a timely notice of appeal on September 20, 2012.

STATEMENT OF FACTS

At about 11:00 a.m. on July 22, 2011, at the Home Depot in San Leandro, loss prevention employees Cesar Ochoa and Samuel Styles noticed appellant walking down an aisle and conversing with another person, Patrick Moton, who was pushing a shopping cart. Ochoa's attention was caught because of the way appellant and Moton were selecting items, throwing them into the cart without taking any time to look at the items. Appellant first put two light switches and a circuit breaker into the cart, not pausing to inspect the items he was taking despite there being numerous choices. As they continued down the aisle, appellant put a box of 100 plates into the cart. Slightly further along, appellant placed a large, heavy spool of copper wire into the cart. Ochoa did not see appellant look at the price tags or examine the wire in any way. He testified that such wire is usually purchased by the foot; it is unusual for a customer to buy an entire spool. Appellant and Moton walked to the plumbing aisle, where appellant placed a Nutone bathroom ceiling fan in the cart, without examining the box or other fans. The men walked down the main aisle toward the hardware department, Moton pushing the cart and appellant putting his hand on it on and off. Appellant put two boxes of screws into the cart, then went to the hinge bay, selected a brass one and brought it back to the cart;

---

[2]Appellant was charged under the name Maurice Holmes; the same information also charged co-defendant Patrick Dale Moton.

again, he did not compare the items he selected to the many options for screws and hinges. The two men walked together down one of the lumber aisles toward the front of the store. As they approached the battery display, they talked for a second and then "quickly" split up, Moton pushing the cart outside while appellant got a soda and took it to a register to pay.

Styles apprehended Moton outside the store and as he escorted Moton inside to the office, Ochoa joined them. Appellant approached them and was told to follow them to the office. Appellant was apprehended as well, both men were placed in handcuffs, and the police were called. The total value of the items in the cart was $1,040.30.

DISCUSSION

I.

Appellant contends that two of the prosecutor's remarks at trial constituted prejudicial prosecutorial misconduct. In his opening statement, the prosecutor told the jury, "all the People are asking is that the defendant accept some responsibility for [the theft]." Appellant did not testify at trial. In closing argument, the prosecutor commented, "I said it at the beginning of this case and I leave you with the same thought now. We're here today because Mr. Nelson simply doesn't want to accept responsibility for what he did that day." Appellant argues that the first statement can only be interpreted as a request for him to waive his constitutional rights under the Fifth Amendment by testifying or pleading guilty, and that the second statement was meant to penalize him for not testifying or waiving his constitutional right to a jury trial. He additionally argues that the prosecutor's statements amounted to improper comment upon his post-arrest silence.

" ' "The applicable federal and state standards regarding prosecutorial misconduct are well established. ' "A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' " (*People v. Gionis* (1995) 9 Cal.4th 1196, 1214; *People v. Espinoza* (1992) 3 Cal.4th 806, 820.) Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is

3

prosecutorial misconduct under state law only if it involves ' " 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " ' " ' ([*People v.*] *Hill* [(1998)] 17 Cal.4th [800,] 819.)" (*People v. Gray* (2005) 37 Cal.4th 168, 215–216.)

Appellant acknowledges that he did not object at trial to the prosecutor's statements. " ' "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' (*People v. Hill,* [*supra,*] 17 Cal.4th at p. 820 (*Hill*).) 'Because we do not expect the trial court to recognize and correct all possible or arguable misconduct on its own motion [citations], defendant bears the responsibility to seek an admonition if he believes the prosecutor has overstepped the bounds of proper comment, argument, or inquiry.' (*People v. Visciotti* (1992) 2 Cal.4th 1, 79.)" (*People v. Gray, supra,* 37 Cal.4th at p. 215.)

There are exceptions to this general rule. "A defendant will be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. (*People v. Arias* (1996) 13 Cal.4th 92, 159; *People v. Noguera* (1992) 4 Cal.4th 599, 638.) In addition, failure to request the jury be admonished does not forfeit the issue for appeal if ' "an admonition would not have cured the harm caused by the misconduct."' (*People v. Bradford* (1997) 15 Cal.4th 1229, 1333, quoting *People v. Price* (1991) 1 Cal.4th 324, 447 (hereafter *Price*).) Finally, the absence of a request for a curative admonition does not forfeit the issue for appeal if 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' (*People v. Green* (1980) 27 Cal.3d 1, 35, fn. 19 . . .; *People v. Pitts* (1990) 223 Cal.App.3d 606, 692; *People v. Lindsey* (1988) 205 Cal.App.3d 112, 116, fn. 1; see also *People v. Noguera*, *supra*, at p. 638 [must request curative admonition 'if practicable'].)" (*People v. Hill, supra,* 17 Cal.4th at pp. 820–821.)

This is not such a case. To the extent the prosecutor's comments created the inferences appellant suggests, there is no reason to believe an objection or request for admonition would have been futile.  The prosecutor's comments were not inflammatory. They did not directly refer to appellant's decision to request a jury trial or decision not to testify (*Griffin v. California* (1965) 380 U.S. 609, 615).  Nor did they refer to appellant's failure to speak to the police after he was arrested (*Doyle v. Ohio* (1976) 426 U.S. 610, 619–620; *Wainwright v. Greenfield* (1986) 474 U.S. 284, 295)—a point about which no evidence was even produced at trial. The jury would most likely have heard the prosecutor's comments simply as a call to them to hold appellant responsible for his conduct.  In fact, an objection might well have suggested to the jurors an interpretation of the prosecutor's remarks they would not have come up with themselves.  Certainly the prosecutor said nothing so egregious that an objection and request for admonition would have been futile or failed to cure any possible harm.

## II.

Appellant contends his presentence custody credits were not calculated correctly. He maintains that his credits should have been calculated pursuant to section 4019, and that an October 1, 2011, amendment that increased the rate for earning conduct credits should have been applied to the portion of his presentence custody served after October 1, 2011.

Appellant was arrested on July 22, 2011, and released on bail on August 10, 2011, after serving 20 days.  He returned to custody upon his conviction on August 2, 2012, and was sentenced on September 14, 2012, after serving 44 days.  The court calculated his presentence custody credit under section 2933.1, which provides that "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit."  Accordingly, appellant was awarded 74 total days of credit, 64 actual time plus 10 conduct credits.  Appellant's conviction for grand theft, however, is not a felony listed in section 667.5, subdivision (c), and, therefore, section 2933.1 did not apply to his case.  Respondent agrees that appellant's credits should have been calculated under section 4019, not under section 2933.1.

5

Section 4019 has been amended a number of times, changing the rate at which defendants in presentence custody can earn conduct credit.  In July 2011, when appellant committed his offense, section 4019 provided that if all credits were earned, a term of six days would be deemed to have been served for every four days actually served.  (Stats. 2010, ch. 426, § 2 (SB 76).)  During 2011, as part of the Realignment Act, section 4019 was amended to increase the rate for earning conduct credits, so that for defendants whose crimes were committed on or after October 1, 2011, a term of four days would be deemed to have been served for every two days actually served.  (Stats. 2011, ch. 15, § 482 (AB 109); Stats. 2011, ch. 39, § 53 (AB 117); Stats. 2011-2012 1st Ex.Sess. ch. 12, § 35.)  This is the currently operative version of Section 4019.  (§ 4019, subds. (b), (c), (f).)  Subdivision (h) of the statute provides, "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

The stated purpose of the Realignment Act was " 'to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.' " (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 49, quoting *People v. Cruz* (2012) 207 Cal.App.4th 664, 679  (*Rajanayagam*).)  The digest for the bills by which the Realignment Act was adopted stated that they addressed the fiscal emergency declared by the governor pursuant to his constitutional authority.  (Stats. 2011, ch. 15, Digest, par. 17 (AB 109); Stats. 2011, ch. 12, Digest, par. 19 (AB X1 17).)[3]

---

[3]The Digest for Assembly Bill 109 stated, "The California Constitution authorizes the Governor to declare a fiscal emergency and to call the Legislature into special session for that purpose. The Governor issued a proclamation declaring a fiscal emergency, and calling a special session for this purpose, on January 20, 2011. [¶] This bill would state that it addresses the fiscal emergency declared by the Governor by proclamation issued on January 20, 2011, pursuant to the California Constitution." (Stats. 2011, ch. 15, Digest, par. 17 (AB 109).)

The Digest for Assembly Bill X1 17 similarly stated, "The California Constitution authorizes the Governor to declare a fiscal emergency and to call the Legislature into

As indicated above, appellant's offense was committed prior to October 1, 2011, and his initial term of presentence custody was served before October 1, 2011. Appellant acknowledges that his credits for this period of presentence custody should be determined by the law in effect prior to October 1, 2011, with a term of six days deemed served for each four days of actual custody. This would result in a total of 30 days of credit for this first period of presentence custody: 20 days of actual custody plus 10 days of custody credit.

Under subdivision (h) of section 4019, appellant's credits for the period of presentence custody that occurred after October 1, 2011, would be calculated pursuant to the same formula, because the new rate of one-for-one credits applies only to prisoners' whose crimes were committed *on or after* October 1, 2011. Appellant argues, however, that principles of equal protection require that he be awarded credits for presentence custody served after October 1, 2011, at the more generous rate. His premise is that individuals remaining in presentence custody after October 1, 2011, for crimes committed before that date are similarly situated to those whose crimes were committed after that date for purposes of earning conduct credits.

In *People v Brown* (2012) 54 Cal.4th 314, 317–318 (*Brown*), the Court considered an eight-month period in 2010 during which section 4019 provided for one-to-one conduct credits, holding that the statute applied only prospectively.[4] In addition to the

---

special session for that purpose. Governor Schwarzenegger issued a proclamation declaring a fiscal emergency, and calling a special session for this purpose, on December 6, 2010. Governor Brown issued a proclamation on January 20, 2011, declaring and reaffirming that a fiscal emergency exists and stating that his proclamation supersedes the earlier proclamation for purposes of that constitutional provision. [¶] This bill would state that it addresses the fiscal emergency declared and reaffirmed by the Governor by proclamation issued on January 20, 2011, pursuant to the California Constitution." (Stats. 2011, ch. 12, Digest, par. 19 (AB X1 17).)

[4]Prior to January 25, 2010, section 4019 provided for defendants to earn two days of credit for each four days of actual custody. (*People v. Rajanayagam, supra,* 211 Cal.App.4th at p. 48.) Effective January 25, 2010, the Legislature increased the accrual rate to allow defendants to earn two days of credit for each two days of actual custody.

general presumption that statutes operate prospectively, *Brown* discussed the fact that the purpose of conduct credits—to provide incentive for good conduct—could not be served by retroactive application because a prisoner's conduct could only be affected by the incentive if he or she was aware of it. (*Brown*, *supra*, 54 Cal.4th at p. 327.) *Brown* rejected the argument that prospective application of the statute violated equal protection, finding that the two groups of prisoners at issue were not similarly situated. "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." ' (*Ibid*.) 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."' (*Ibid*.)

"As we have already explained, the important correctional purposes of a statute authorizing incentives for good behavior (see *People v. Austin* [(1981)] 30 Cal.3d 155, 163) are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows. . . . 'The obvious purpose of the new section . . . is to affect the behavior of inmates by providing them with incentives to engage in productive work and maintain good conduct while they are in prison.' ([*People v.*] *Strick* [(1983)] 148 Cal.App.3d 906,] 913.) '[T]his incentive purpose has no meaning if an inmate is unaware of it. The very concept demands prospective application.' (*Ibid*.) 'Thus, inmates were only similarly situated with respect to the purpose of [the new law] on [its effective date],

_____

(*Ibid.*; Stats. 2009-2010, 3d Ex. Sess., ch. 28, § 50 (SBX3 18).) Another amendment, effective September 28, 2010, returned to the less generous provision of credit, under which a term of six days would be deemed to have been served for every four days actually served. (Stats. 2010, ch. 426, § 2 (SB 76).)

when they were all aware that it was in effect and could choose to modify their behavior accordingly.' (*Ibid*.)" (*Brown, supra,* 54 Cal.4th at pp. 328–329.)

Appellant argues that, under *Brown's* reasoning, all prisoners in presentence custody after October 1, 2011, have the same incentive to modify their behavior in order to earn increased conduct credits. Accordingly, he maintains all are similarly situated with respect to the purpose of the law, regardless of whether their offenses were committed before or after October 1, 2011.

This argument is persuasive. As the court explained in *Rajanayagam, supra,* 211 Cal.App.4th at p. 53, considering the group of defendants in jail on or after October 1, 2011, for crimes committed on or after that date, and the group of defendants in jail on or after October 1, 2011, for crimes committed before that date, for purposes of the statutory amendment increasing conduct credits, "Nothing distinguishes the efforts of a prisoner who committed a crime after October 1, 2011, to earn conduct credits from the efforts of one who committed the same crime before that date. Both classifications of prisoners, pre- and post-October 1, 2011, offense defendants, are aware of the conduct credit provision and have an incentive to perform assigned work and comply with rules and regulations because both classifications have the opportunity to earn conduct credit, just at different rates. To argue that a defendant who committed an offense before October 1, 2011, but was in local custody on or after that date was not aware of the conduct credit provision and did not have an incentive to work and behave is unpersuasive." Accordingly, *Rajanayagam* found the two groups similarly situated for purposes of the October 1, 2011, amendment to section 4019. (*Ibid.*) "Both classes have an incentive to work and behave but a defendant who committed a crime before the effective date is rewarded less. Thus, based on the facts before us, the current version of section 4019 creates a classification that affects two similarly situated groups in an unequal manner. (Contra, *People v. Kennedy* (2012) 209 Cal.App.4th 385, 396–397 [(Kennedy)] [relying

9

on *Brown* to find two groups not similarly situated].)" (*Rajanayagam, supra,* 211 Cal.App.4th at pp. 53–54.)[5]

This disparate treatment of similarly situated groups, however, amounts to an equal protection violation only if it is not sufficiently justified. "Where, as here, the statutory distinction at issue neither touches upon fundamental interests nor is based on gender, there is no equal protection violation if the challenged classification bears a rational relationship to a legitimate state purpose. ([*People v. Hofsheier* (2006) 37 Cal.4th 1185,] 1201; [*People v.*] *Cruz,supra,* 207 Cal.App.4th at pp. 677–679.) Under the rational relationship test, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1202.)" (*Rajanayagam, supra,* 211 Cal.App.4th at p. 53.)

We agree with the *Rajanayagam* court that this highly deferential test is satisfied in the case of the amendment at issue here. In addition to the stated purpose of the Realignment Act to " 'reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending[,]' " *Rajanayagam* noted the provision in section 17.5, subdivision (a)(7), adopted as part of the Realignment Act, that " '[t]he purpose of justice reinvestment is to manage and allocate criminal justice populations more cost-effectively, generating savings that can be reinvested in evidence-based strategies that increase public safety while holding offenders accountable.' " (*Rajanayagam, supra,* 211 Cal.App.4th at p. 55, italics omitted.) The court concluded

---

[5]*Kennedy* applied *Brown*'s reasoning—that it did not serve the purpose of a statute meant to provide incentive for good conduct to apply the statute to a defendant in jail before the effective date of the statute—without discussing the fact that *Brown* involved only a question of retroactivity to a term of custody that predated the effective date of the amendment, not a term served *after* the effective date (as in *Kennedy, Rajanayagan* and the present case). *Kennedy* went on to hold that even if the defendant was similarly situated to defendants in custody after October 1, 2011, who committed their crimes after that date, there was a sufficient basis for the legislative distinction. (209 Cal.App.4th at pp. 397–398.)

10

that "the classification in question does bear a rational relationship to cost savings." (*Ibid.*) "[I]n choosing October 1, 2011, as the effective date of Assembly Bill No. 109, the Legislature took a measured approach and balanced the goal of cost savings against public safety. The effective date was a legislative determination that its stated goal of reducing corrections costs was best served by granting enhanced conduct credits to those defendants who committed their offenses on or after October 1, 2011. To be sure, awarding enhanced conduct credits to everyone in local confinement would have certainly resulted in greater cost savings than awarding enhanced conduct credits to only those defendants who commit an offense on or after the amendment's effective date. But that is not the approach the Legislature chose in balancing public safety against cost savings. ([*People v.*] *Floyd* [(2003)] 31 Cal.4th [179,] 190 [Legislature's public purpose predominate consideration].) Under the very deferential rational relationship test, we will not second-guess the Legislature and conclude its stated purpose is better served by increasing the group of defendants who are entitled to enhanced conduct credits when the Legislature has determined the fiscal crisis is best ameliorated by awarding enhanced conduct credit to only those defendants who committed their offenses on or after October 1, 2011." (*Rajanayagam, supra,* 211 Cal.App.4th at pp. 55–56.)[6]

Appellant additionally argues that subdivision (h) of section 4019 is ambiguous and, therefore, we should apply the rule of lenity, under which ambiguity in a criminal statute is resolved by giving the defendant the " 'benefit of every reasonable doubt on questions of interpretation.' " (*In re M.M.* (2012) 54 Cal.4th 530, 545.) The claimed ambiguity is in the second sentence of subdivision (h), which states that "[a]ny days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." Appellant argues that by specifying that days earned prior to October 1, 2011, are to be calculated under prior law, this sentence implies that days earned *after*

---

[6]This conclusion that the distinction drawn in section 4019 served a rational legislative purpose also resolves appellant's contention that the two groups of prisoners are similarly situated with respect to the fiscal purpose of the law as well as its purpose of motivating good conduct.

11

October 1, 2011, are to be calculated at the new, more generous rate. The statute is ambiguous, appellant urges, because under this interpretation, the second sentence conflicts with the first sentence, which expressly states that the amendment "shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011."

Appellant acknowledges two cases that have rejected his interpretation of the second sentence of subdivision (h), *Rajanayagam, supra,* 211 Cal.App.4th at p. 52, and *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1553, but disagrees with their reasoning. As explained in *Rajanayagam,* to accept appellant's interpretation of the second sentence of subdivision (h) would be to render the first sentence meaningless. (211 Cal.App.4th at p. 51.) We must, if possible, construe a statute to give effect to all its provisions, and to harmonize all its parts. (*Id.* at pp. 51–52.) "[S]ubdivision (h)'s first sentence reflects the Legislature intended the enhanced conduct credit provision to apply only to those defendants who committed their crimes on or after October 1, 2011. Subdivision (h)'s second sentence does not extend the enhanced conduct credit provision to any other group, namely those defendants who committed offenses before October 1, 2011, but are in local custody on or after October 1, 2011. Instead, subdivision (h)'s second sentence attempts to clarify that those defendants who committed an offense before October 1, 2011, are to earn credit under the prior law. However inartful the language of subdivision (h), we read the second sentence as reaffirming that defendants who committed their crimes before October 1, 2011, still have the opportunity to earn conduct credits, just under prior law. (*People v. Ellis*[, *supra,*] 207 Cal.App.4th [at p.] 1553.) To imply the enhanced conduct credit provision applies to defendants who committed their crimes before the effective date but served time in local custody after the effective date reads too much into the statute and ignores the Legislature's clear intent in subdivision (h)'s first sentence." (*Rajanayagam, supra,* 211 Cal.App.4th at p. 52.)

Appellant spent a total of 64 days in presentence custody. Calculating the credits for the 44 days of presentence custody after October 1, 2011, at the same rate applicable to the time spent before that date, appellant should have been awarded 66 days of credit

for this period:  44 days of actual custody plus 22 days of conduct credit.  In total, for his 64 days of actual presentence custody, appellant should have been awarded 96 days credit.

## DISPOSITION

The abstract of judgment shall be corrected to reflect an award of 96 days of presentence custody credit.  As so modified, the judgment is affirmed.


_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Brick, J.*


\* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


13